**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------x
UNITED STATES OF AMERICA        :
                                :    07 Cr. 003 (BSJ)
          v.                    :
                                :    **Memorandum Order**
CHRISTOPHER DIAZ,               :
                                :
                    Defendant.  :
------------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

    Defendant Christopher Diaz ("Diaz") moves pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B) to withdraw his guilty plea. For the reasons set out below, the Motion is DENIED.

### BACKGROUND

    On April 11, 2007, Diaz was arrested and charged with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A). On May 5, 2009, Diaz was charged in a superseding indictment (the "Indictment") with conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A) (Count One) and with possessing and discharging a firearm in furtherance of that conspiracy in violation of 18 U.S.C. § 924(c) (Count Two).

    On May 8, 2009, Diaz entered a plea of not guilty on both Counts of the Indictment. Shortly thereafter, on May 27, 2009, Diaz entered into a written plea agreement (the "Agreement") with the Government. Under the Agreement, Diaz agreed to plead

guilty to Count One of the Indictment, and the Government agreed to move to dismiss Count Two.  The Agreement set forth the maximum and minimum penalties for Count One:  namely, a maximum sentence of life imprisonment and a mandatory minimum sentence of ten years' imprisonment.

On May 28, 2009, Diaz pled guilty to Count One of the Indictment before this Court.  At the beginning of the hearing, the Court marked the Agreement as Court Exhibit 1.  (May 28, 2009 Plea Tr. 2.)  The Court then asked Diaz a number of questions to confirm that his plea was voluntary, including whether he had had a full opportunity to discuss the Indictment with his counsel. (Id. 6, 10-12.)  Diaz responded affirmatively to these questions.  (Id.)  The Court also reviewed the Indictment with Diaz and confirmed that he understood both the charges against him and the consequences of the Agreement.  (Id. 9-10, 14-19.)

On June 26, 2009, Diaz filed the instant Motion to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B).  Diaz claims that he was incorrectly advised by counsel as to the possible sentencing consequences of proceeding to trial, and thus that his guilty plea was not free and voluntary.  See Parke v. Raley, 506 U.S. 20, 28, 29 (1992) (holding that a "guilty plea must be both knowing and voluntary"

2

and must be a "voluntary and intelligent choice among the alternative courses of action" available to defendant).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a guilty plea may be withdrawn before sentencing if a defendant shows "a fair and just reason for requesting the withdrawal." The defendant bears the burden of making this showing, and "[a] defendant has no absolute right to withdraw his plea of guilty." United States v. Williams, 23 F.3d 629, 634 (2d Cir. 1994).

To determine whether a "fair and just reason" exists for withdrawal, a district court may consider: "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." United States v. Schmidt, 373 F.3d 100, 102-03 (2d Cir. 2004). If the movant is unable to carry his burden of showing that a fair and just reason supports the withdrawal of his guilty plea, the district court need not reach the question of prejudice to the government. See United States v. Rosen, 409 F.3d 535, 546 (2d Cir. 2005). Courts may also look to whether the defendant has "raise[d] a significant question about the

voluntariness of the original plea." United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997).

Under certain circumstances, ineffective assistance of counsel can undermine the knowing and voluntary nature of a guilty plea. To establish ineffective assistance of counsel in the context of a plea negotiation, a defendant must show (1) that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice." Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Cullen v. United States, 194 F.3d 401, 403 (2d Cir. 1999) (applying Strickland in plea bargain context). In assessing the first element of this test, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (internal quotation omitted). To establish the second element, the defendant must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2002) (per curiam).

Where, as here, "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, the issue is whether the defendant was aware of actual sentencing possibilities [at the time of the plea], and if not, whether accurate information would have made any difference in his decision to enter a plea." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) (internal quotation omitted).  In determining whether incorrect legal advice so prejudiced the defendant that withdrawal of a guilty plea is appropriate, district courts look to the record as a whole in assessing whether the defendant reasonably would have chosen another course had he received correct advice, what benefit the defendant may have gained from his guilty plea, the strength of the Government's proof, and the possibility of a significantly worse outcome at trial.  See id. at 321-22 (evaluating these factors).  A defendant's bald assertion that he would not have pled guilty but for the incorrect advice is not in itself sufficient to show prejudice in the context of guilty pleas. See id. at 322 (finding that "a self-serving and conclusory statement of this kind is insufficient in itself to show prejudice in the context of guilty pleas").

## DISCUSION

In the instant case, Diaz states that he was advised by his counsel that "if convicted solely of the conspiracy to

5

distribute crack, [he] would face a ten year statutory minimum sentence" and that "if [he] was also convicted of the 924(c) charge, [he] would face an additional, mandatory minimum sentence of (i) 5 years if found to have possessed a firearm, (ii) 7 years if found to have brandished a firearm, or (iii) 10 years if found to have discharged a firearm."  (Diaz Aff. ¶ 7.) Diaz was also apparently advised that his maximum term was life imprisonment.  (See id. ¶ 6.)

Under United States v. Williams, "the mandatory minimum sentence under Section 924(c)(1)(A) is . . . inapplicable where the defendant is subject to a longer mandatory minimum sentence for a drug trafficking offense that is part of the same criminal transaction or set of operative facts as the firearm offense." 558 F.3d 166, 168 (2d Cir. 2009).  Accordingly, Diaz would not have faced any mandatory minimum sentence under § 924(c) additional to that under 21 U.S.C. § 841(b)(1)(A) if found to have possessed or brandished a firearm in furtherance of the conspiracy to distribute crack cocaine, because the five- and seven-year mandatory minimum sentences for possessing or brandishing a firearm were shorter than Diaz's ten-year mandatory minimum sentence for the crack conspiracy itself.  If found to have discharged a firearm in furtherance of the crack conspiracy, on the other hand, Diaz would have received a ten-year minimum sentence under § 924(c) in addition to the ten-year

6

mandatory minimum for violation of 21 U.S.C. § 841(b)(1)(A).  In short, Diaz's options after trial were either a ten or twenty year mandatory minimum, without the intervening levels of fifteen and seventeen years apparently indicated by defense counsel.  Diaz's maximum sentence after trial was, as counsel advised, life imprisonment.

    Diaz now moves to withdraw his guilty plea, claiming that the incorrect advice he apparently received from counsel regarding potential trial outcome constitutes ineffective assistance of counsel under <u>Strickland</u>.  Diaz was correctly advised of the comparative maximum terms and the comparative highest and lowest mandatory minimums he was exposed to between standing trial and accepting the plea offer.  However, Diaz seems to claim that since he thought it unlikely he would be convicted of discharging a firearm, the possibility of a five- or seven-year mandatory minimum sentence for possessing or brandishing a firearm were of greater relevance in his decision to plead guilty than the ten-year mandatory minimum for discharging a firearm.  (<u>See</u> Def. Mot. 6 n.1.)  Specifically, Diaz states that "[a]fter comparing the risk of facing a ten year mandatory minimum if [he] accepted the plea agreement with a fifteen or seventeen year mandatory minimum if [he] was convicted on the narcotics charges and either possessing or brandishing a gun, [he] decided to accept the Government's plea

7

offer." (Diaz Aff. ¶ 10.) Diaz further states that "[h]ad [he] understood that if [he was] found guilty of possessing or brandishing a firearm, [he] would not face an additional mandatory minimum, [he] would not have accepted the plea agreement." (Id. ¶ 11.)

The Second Circuit has differentiated between "predictive" errors and "factual" errors in the context of withdrawal of guilty pleas. While the former do not generally warrant the withdrawal of pleas, the latter may provide a basis for such a withdrawal if they render the decision to plead guilty less than voluntary or intelligent. See Arteca, 411 F.3d at 321. For example, an attorney's failure to adequately advise his client about the consequences that attach to a guilty plea offer may constitute constitutionally deficient performance. See United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (holding that defendant was denied effective assistance of counsel at plea negotiations when defense counsel "grossly underestimate[ed]" defendant's potential maximum sentence). However, a "mistaken prediction" of the sentence to be imposed—a mistaken Guidelines calculation—does not rise to the level of ineffective assistance of counsel. See, e.g., United States v. Sweeney, 878 F.2d 68, 70 (2d Cir. 1989) (per curiam) (holding that "mistaken estimates" under the Guidelines "will not ordinarily justify withdrawal of a guilty plea"). Where the record indicates that

a defendant was otherwise aware of the maximum he faced, and that the sentence imposed was within the sentencing court's discretion, the plea is considered voluntary and valid. Sweeney, 878 F.2d at 69.

Defense counsel's failure to correctly advise Diaz as to the possible consequences of proceeding to trial may qualify as objectively unreasonable under Strickland.  In fact, the Second Circuit has repeatedly found that errors relating to sentencing exposure at trial is "an error that related to a key consideration for defendant in making an informed decision," because "knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty."  Davis v. Greiner, 428 F.3d 81, 89 (2d Cir. 2005).  However, Diaz has failed to show prejudice—i.e., that but for counsel's erroneous advice, he would not have pled guilty and instead would have proceeded to trial.  See Hill, 474 U.S. at 59.

The factors discussed in Arteca all mitigate against finding prejudice in this case.  First, the erroneous advice here was not related to the consequences of entering the plea. See Arteca, 411 F.3d at 321.  There is no dispute that defense counsel correctly advised Diaz that if he accepted the Government's plea offer, he would be subject to a mandatory minimum sentence of ten years in prison, with a maximum sentence

9

of life imprisonment.  There is also no dispute that the Court correctly advised Diaz of these possible consequences at the time of his plea, that Diaz indicated that he understood the Court's advice on that issue, that the Agreement advised Diaz of these consequences, and that Diaz indicated at his plea allocution that he had read the Agreement and had discussed it with his counsel.  (See May 28, 2009 Plea Tr. 9-11.)

Second, when the record as a whole is evaluated, it does not support Diaz's contention that there is a reasonable possibility that, had he been correctly informed of his possible sentencing outcomes, he would have elected to proceed to trial instead of pleading guilty.  Diaz gained an enormous strategic benefit from accepting the Government's plea offer—namely, the Government's Agreement to accept his plea only to Count One, and to dismiss the 18 U.S.C. § 924(c) charge entirely at sentencing. This Agreement ensured that Diaz's highest possible mandatory minimum sentence would be ten years, rather than the twenty-year mandatory minimum he risked by going to trial. See Arteca, 411 F.3d at 321-22 (find no prejudice where "in the absence of a plea agreement, the government would presumably have been free to prosecute [defendant] on any open counts against him").  Diaz also received a three-level reduction in his Guidelines offense level for acceptance of responsibility. See id. at 321 (finding no prejudice when "in pleading guilty, [defendant] earned a

three-level reduction from his base offense level for acceptance of responsibility—a benefit that he would have lost had he gone to trial"). See generally Padilla v. Keane, 331 F. Supp. 2d 209, 217 (S.D.N.Y. 2004) (["W]here the defendant secured a significant strategic benefit by pleading guilty, courts are generally less likely to suspect an involuntary or misguided decision to plead.").

Third, the Government's proof is strong, indicating that Diaz would likely have received at least the ten-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A) had he proceeded to trial. Diaz previously pled guilty to selling crack on the same block where the crack conspiracy operated. All of Diaz's co-defendants who, like him, were not charged with murder or racketeering have pled guilty. The Government further states that its proof is as strong with respect to discharging a firearm in furtherance of the crack conspiracy as with respect to possessing or brandishing a firearm, belying Diaz's belief that he would more likely have been convicted on the possession and brandishment charges. (See Gov't Mot. Opp'n 10 ("[T]he Government's evidence regarding use, brandishment, and discharge was of the same type, quantity, and quality—namely, the testimony of multiple cooperators who would largely corroborate each other as to Diaz's use, brandishing, and discharge of firearms on specific occasions during the course of and in

furtherance of the charged crack conspiracy.").) Diaz has offered no basis to doubt the strength of the Government's case against him. See Arteca, 411 F.3d at 321 (finding no prejudice where "co-defendants have also pled guilty, and [defendant] has not provided any persuasive reason for doubting the strength of the government's case against him").

The more general factors discussed in Schmidt and elsewhere also point to denial of the instant Motion. Diaz has not asserted his legal innocence, and in fact plainly stated his guilt in the course of the plea allocution. See Schmidt, 373 F.3d at 102; (May 28, 2009 Plea Tr. 16-19.) The Government claims that it will be significantly prejudiced by withdrawal of this guilty plea, noting that "[m]uch of the work that went into trial preparation would have to be redone should Diaz be re-consolidated for trial with his other co-defendants, and, while there is some overlap in the proof against Diaz with what will be presented in any event at that larger trial, the overlap is far from perfect." (Gov't Mot. Opp'n 12-13.) Moreover, Diaz has not raised a question about the voluntariness of his plea, see Torres, 129 F.3d at 715, as it is clear that he did not suffer prejudice based on any alleged ineffective assistance of counsel.

Because Diaz has not shown that he suffered prejudice from the inaccurate information that his lawyer provided, and because

Diaz can point to no other convincing reason to grant this Motion to Withdraw, the Motion must be denied in its entirety.

## CONCLUSION

For the reasons set forth above, Defendant Christopher Diaz's Motion to Withdraw his Guilty Plea is DENIED.

**SO ORDERED:**

*[signature]*

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:  New York, New York
        December 3, 2009